UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SURJIT SINGH and BEERA KAUR,<br><br>Defendants and Alleged Judgment Debtors. | No. 2:19–mc–57 MCE-KJN<br><br>ORDER<br>OVERRULING DEFENDANT'S OBJECTION AND ISSUANCE OF<br>FINAL ORDER OF GARNISHMENT<br><br>(ECF Nos. 10, 12, 21, 22.) |

This dispute concerns the potential garnishment of cash in a bank account and the unknown contents of two safe deposit boxes held by Bank of America, as governed by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3205(b)(1).[1] Defendant Surjit Singh owes close to three million dollars in fines related to his criminal conviction. The U.S. contends Defendant Beera Kaur is Defendant Singh's wife, and so is jointly liable for the debt. Kaur objects to the Writ, that she is not married to Defendant Singh.

Based on the record, the briefing and assertions at oral argument, the undersigned is persuaded that Beera Kaur and Defendant Surjit Singh are in fact married. Thus, the Court overrules Kaur's objections and grants the U.S.'s writ of garnishment.

---

[1] This matter initially proceeded before the Magistrate Judge pursuant to Local Rule 302(c)(7). See Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1)(A); see also 28 U.S.C. § 3008. Prior to the October 31 hearing, both parties consented to the jurisdiction of the undersigned for all purposes. See L.R. 305(b); Fed. R. Civ. P. 73. (ECF Nos. 10–1, 24, 25.)

**Background**

On November 9, 2018, Defendant Surjit Singh was sentenced in criminal case no. 2:13–cr–84–GEB (mortgage fraud), and was ordered to pay a $1200 penalty, a fine of $2 million and almost $700,000 in restitution—Singh has only paid the $1200 fine. (ECF No. 1 at p. 2.) The U.S. filed an Application for a Writ of Garnishment under the FDCPA, believing that "Singh has an interest in bank, stock or brokerage account(s) and property . . . in the possession, custody or control of Bank of America, N.A." (Id.) The Application detailed information concerning Defendant Singh, including the last four digits of his social security number and his last known address. (Id.) The Writ Application also stated the U.S.'s belief that Defendant Beera Kaur is Singh's spouse; and detailed information as well—including the last four digits of her social security number and last known address. (Id.) In the Application, the U.S. averred that since California is a community property state (see Cal. Fam. Code § 910), the writ should attach to any of Kaur's interests in Singh's property. (Id.)

The Clerk of the Court issued the Writ, and Bank of America subsequently identified a checking account and two safe deposit boxes "in which Surjit Singh . . . or his spouse Beera Kaur maintains an interest . . . ." (ECF Nos. 3, 9–10.)

Kaur objected to the writ, mainly arguing that she is not married to Defendant Surjit Singh. Kaur requested a hearing under 28 U.S.C. § 3205(c)(5). (ECF No. 10.) The crux of Kaur's argument is summarized in her response to the U.S.'s Request for Admissions, served in August 2019. Therein, Kaur admitted that "she was married to a Surjit Singh in India before coming to the United States, [but] that person is not the same person as Defendant Surjit Sing ...." (ECF No. 18–1 at p. 59, emphasis added.) Kaur argues that without evidence of a marriage, the U.S. hasn't met its burden of persuasion to show Singh and Kaur are married. The U.S. disagrees, relying on other documents to demonstrate the two are married.

The Court set a hearing on the matter for June 13, 2018, but continued it multiple times at the parties requests for more briefing and investigation time. (See ECF Nos. 14, 16, 20.) Each party submitted what the Court construes as final briefing on the matter. (ECF Nos. 21, 22.)

////

2

**Legal Standard**

Pursuant to the Federal Debt Collection Procedures Act,

> [a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor. Co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located.

28 U.S.C. § 3205(a). The statute notes that "property" includes any present interest in personal property, tangible or intangible, "wherever located and however held (including community property . . . ." 28 U.S.C. § 3002(12); see also §3205(a) (providing that "[c]o-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located."

Under the FDCPA, the government is required to provide the judgment debtor with notice of the commencement of garnishment proceedings. 28 U.S.C. § 3202(b). The judgment debtor has twenty days after receipt of the notice to request a hearing, thereby moving to quash the garnishment. 28 U.S.C. § 3202(d). If a garnishment hearing is held, the FDCPA expressly limits the issues to (1) "the probable validity of any claim of exemption by the judgment debtor;" (2) "compliance with any statutory requirement for the issuance of the post–judgment remedy granted; and (3) if the judgment is by default . . . to—(A) the probable validity of the claim for the debt which is merged in the judgment; and (B) the existence of good cause for setting aside such judgment." Id. Of note, it is the objecting party's burden to prove the grounds for the objection. 28 U.S.C. § 3205(c)(5).

Any of a judgment debtor's property subject to sale to satisfy the judgment may be sold by judicial sale, pursuant to sections 2001, 2002, and 2004 or by execution sale pursuant to section 3203(g). §3202(e). "If a hearing is requested pursuant to subsection (d), property with respect to which the request relates shall not be sold before such hearing." Id.

**Analysis**

Here, the Court finds that under the FDCPA, the U.S. has sufficiently identified property subject to garnishment, and Defendant Kaur has failed to carry her burden on her objection.

3

As noted above, on November 9, 2018, Defendant Surjit Singh was sentenced in criminal case no. 2:13–cr–84–GEB (mortgage fraud), and was ordered to pay a $1200 penalty, a fine of $2 million and almost $700,000 in restitution—Singh has only paid the $1200 fine. (ECF No. 1 at p. 2.) In April 2019, the U.S. requested, and the Clerk of the Court issued, a writ of garnishment for property owned by Defendants Singh and Kaur held by Bank of America. (ECF Nos. 1, 3.) Thereafter, the Bank identified a checking account and two safe deposit boxes "in which Surjit Singh . . . or his spouse Beera Kaur maintains an interest . . . ." (ECF Nos. 3, 9–10.) Thus, facially, this property is subject to garnishment. See, e.g., United States v. Prasad, 2019 WL 2521976, at *3 (E.D. Cal. June 19, 2019) (finding co–owned accounts identified by credit union to be subject to garnishment under 28 U.S.C. § 3205(a) and § 3002(12)).

Also as noted above, Plaintiff timely objected and requested a hearing. (ECF No. 10.) Therein, Kaur asserted that she does not owe money on Defendant Singh's debt because she "is not the spouse of Surjit Singh" and the accounts at issue are not jointly held with Defendant Singh. (Id.) The Court held the hearing on October 31, 2019. (ECF No. 23.)

Kaur's arguments have evolved since her initial objection, and her current stance appears to be that "she was married to a Surjit Singh in India before coming to the United States, that person is not the same person as Defendant Surjit Sing . . . ." (ECF No. 18–1 at p. 59, Kaur's responses to Requests for Admissions.) Kaur points out that the U.S. has failed to produce a marriage license indicating the two were in fact married, and that based on her own investigation, Defendant Singh married a Lalarfern Dixson in 1983. (ECF Nos. 12, 17; see also 12–1, decl. of investigator Scoville; 12–2, marriage license between a Surjit Singh and a Lalarfern Dixson; ECF No. 21 at p. 23, Singh's N–400 listing Dixon as his spouse.) She also points to specific portions of the criminal trial transcript and briefing to argue that it was never conclusively established that she and Defendant Singh were married. Finally, Kaur argues the U.S. should be judicially estopped from asserting she is married to Defendant Singh because during the criminal trial, the U.S. sometimes labeled her as Singh's "significant other"—which she argues is inconsistent with their current labeling of her as his wife. (See ECF No. 17 at pp. 25–37.)

The U.S. submitted the following affirmative evidence to demonstrate that Kaur is in fact

married to Defendant Singh.  First, the U.S. points to certain of Kaur's immigration documents, filed under penalty of perjury, where Kaur asserted she was married to Surjit Singh.  (See ECF No. 21 at pp. 9–12, Kaur's I–485 "Application to Register Permanent Residence," filed in 2002, checking the marital–status box for "married" and listing Surjit Singh in the section for "present husband"; 18–1 at pp. 24–38, Kaur's Form N–400 "Application for Naturalization," filed in 2010, wherein Kaur stated under penalty of perjury that she is married to Surjit Singh.)  Second, the U.S. notes how these documents indicate Defendant Singh ("my HU") is the father of Kaur's children and that the family lived together in Dublin, Ca.  This linkage between Defendants Singh and Kaur comports with other documents submitted by the U.S.—including Defendant Singh's own immigration documents where he indicated that the two lived at the same address with two of their children.  (See Id.; see also ECF No. 21 at pp. 20–33, Defendant Singh's N–400, filed in 2011.)  Third, the U.S. submitted copies of grant deeds between Kaur and Singh, which were made as "intra–spousal transfers."  (ECF No. 18–1 at pp. 39–52.)  Finally, the Court notes that the writ, as issued, ordered Bank of America to withhold "any and all property and accounts in which Surjit Singh and his spouse Beera Kaur have an interest," and Bank of America subsequently identified the one checking account and two safe deposit boxes.  (ECF Nos. 3, 9–10.)  Thus, there is ample evidence not only connecting Kaur to Defendant Singh, but highly persuasive that the two are in fact married.

In addition to the affirmative proof of Defendant Sing's marriage to Kaur, the U.S. offers rebuttal to some of Kaur's contentions.  The U.S. submitted evidence that Lalerfern Dixson died in October of 1992.  (ECF No. 21 at p. 7–8.).  Further, despite Kaur's pointing to the criminal–trial record that certain individuals were uncertain about Kaur's marriage to Singh, the U.S. notes that others did so testify.  (See ECF No. 18–1 at pp. 80–82.)  Finally, the U.S. argues it was not inconsistent in referring to Kaur as Singh's "significant other," as the term can include wife; the U.S. did in fact refer to Kaur as "wife" at other points in the trial.  (See Id. at pp. 83–92.)  These rebuttals are well taken, and further support the U.S.'s position that a marriage exists between Kaur and Defendant Singh.

Thus, the evidence submitted by the U.S. indicates the following:  (1) from Kaur's point

5

of view, she married a man named Surjit Singh in India in the early 1990's; (2) the documents listed above support that a marriage exists between Kaur and Surjit Singh; (3) from certain third parties' point of view, Kaur and Defendant Singh were married; and (4) Singh's evidence indicating otherwise is sufficiently rebutted.² See Cal. Fam. Code § 305 ("Consent to and solemnization of marriage may be proved under the same general rules of evidence as facts are proved in other cases."); see also Freeman S.S. Co. v. Pillsbury, 172 F.2d 321, 323 (9th Cir. 1949) ("[A] party to a marriage may testify as to its solemnization.") (citing Estate of Crawford, 69 Cal. App. 2d 609 (1949) ("Every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality – only casting the burden of proof on the party objecting, but requiring him throughout, in every particular, to make plain, against the constant pressure of presumption, the truth of law and fact that it is illegal and void."). This evidence is sufficiently persuasive for the Court to find that, for purposes of these proceedings, Beera Kaur and Defendant Surjit Singh are in fact married.

////

////

---

² Kaur notes that none of the evidence supporting the U.S.'s claims conclusively demonstrates she is married to Defendant Singh. (ECF No. 22.) She does not appear to deny that she had children with him or live with him, but rather asserts that these things do not in and of themselves make a person married. She also argues she had nothing to do with the "intra–spousal transfer" nature of the grant deeds, attempting to put further distance between herself and Defendant Singh. Simply, Kaur argues that these things can coexist with her assertion that she was married to a Surjit Singh but not Defendant Surjit Singh. However, for the Court to find Kaur's arguments persuasive, the undersigned would not only need to agree with all of her arguments, but also would need to agree with the following: (1) Kaur married a man named Surjit Singh in India in the early 1990s; (2) Kaur then emigrated to the United States shortly thereafter without this Surjit Singh; (3) Kaur then met a different Surjit Singh (the Defendant), had three children and lived with this second Singh in the latter parts of the 2010s but did not marry him; (4) Even though Kaur and Singh aren't married, she participated in grant deeds made as "intra–spousal transfers" with Defendant Singh; and (5) Joti Rani's (Defendant Singh's daughter) testimony as to Kaur's marriage to Defendant Singh was false (or at a minimum mistaken). The undersigned cannot make such a leap.

At the hearing on this motion the Court also invited Kaur to take the witness stand and testify under oath that she was not married to Defendant Surjit Singh, but Kaur declined that opportunity.

**Conclusion**

For the reasons stated above the Court finds that Kaur has failed to meet her burden of proof under 28 U.S.C. § 3205(c)(5), and so her objection to the writ of garnishment is overruled. Further, the Court finds that Kaur is married to defendant Surjit Singh for purposes of this writ proceeding. Because no further objections are before the Court, the undersigned finds that the U.S. has identified property— the checking account and two safe–deposit boxes at Bank of America—that is community property of Defendant Singh and Beera Kaur, and thus is subject to garnishment. Finally, the Court finds the U.S. is entitled to receive the requested litigation surcharge under 28 U.S.C. 3011(a).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Kaur's objections to the writ of garnishment (ECF Nos. 10, 12, 17, 22) are OVERRULED;
2. Pursuant to 28 U.S.C. § 3205(c)(7), Garnishee, Bank of America, N.A., shall liquidate and pay to the Clerk of the Court the entire balance in Account Number ***9187, within fifteen (15) days of the filing of this Order;
3. Payment shall be made in the form of a cashier's check, money order or company draft, made payable to the Clerk of the Court and delivered to the United States District Court, Eastern District of California, 501 I Street, Room 4-200, Sacramento, California 95814. The criminal docket number (2:13-cr-00084-GEB) shall be stated on the payment instrument;
4. The United States is entitled to recover a $269,878.80 litigation surcharge after satisfaction of the judgment in the criminal case denominated as <u>United States v. Surjit Singh, et al.</u>, Case No., 2:13-cr-00084-GEB (ECF 261);
5. Pending further order of this Court, the Safe Deposit Boxes shall remain locked and inaccessible to any persons or entities other than the United States. Bank of America shall permit representatives from the United States Attorney's Office, within thirty (30) days of the filing of this Order and upon reasonable notice, to inspect,

photograph, and inventory the contents of Safe Deposit Boxes ***0932 and ***06M8 in the presence of a Bank of America official. Bank of America shall allow the United States to inspect and copy all records in its possession, custody, or control associated with the creation, maintenance, and access to the Safe Deposit Boxes. If the United States determines that the Safe Deposit Boxes contain items that can be liquidated for the payment of restitution, the United States shall submit an appropriate order for the Court's approval; and

6. The Court shall retain jurisdiction to resolve matters through ancillary proceedings in the case, if necessary.

IT IS SO ORDERED.

Dated: November 13, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

sing.57